34 P.3d 1218 (2001)
145 Wash.2d 152
STATE of Washington, Petitioner,
v.
Mink FIRE, a/k/a David Paul Mrowka, Respondent.
No. 69851-1.
Supreme Court of Washington, En Banc.
Argued February 15, 2001.
Decided November 29, 2001.
*1219 Randall Keenan Gaylord, San Juan County Prosecutor, Friday Harber, Brett & Daugert, Philip james Buri, Bellingham, for Petitioner.
Nielsen, Broman & Assoc. James R. Dixon, Christopher Gibson, Seattle, Catherine E. Glinski, Manchester, for Respondent.
BRIDGE, J.
The State asks this court to review the Court of Appeals decision in State v. Fire, 100 Wash.App. 722, 724, 729, 998 P.2d 362 (2000), which reversed Mink Fire's convictions and remanded for a new trial because the trial court should have excused a potential juror for cause. The State asks this court to determine whether that juror should have been dismissed for cause and whether, where a defendant exercises a peremptory challenge to remove a juror who should have been excused for cause and the defendant subsequently exhausts all of his peremptory challenges, the remedy is automatic reversal without a further showing of prejudice.
*1220 We find that even if that juror should have been dismissed for cause, Fire exercised one of his peremptory challenges to remove the juror, and there is no showing that a biased juror, against whom the peremptory challenge might have been used, sat on his panel. Following the reasoning in United States v. Martinez-Salazar, 528 U.S. 304, 307, 315-16, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) and State v. Roberts, 142 Wash.2d 471, 517-18, 14 P.3d 713 (2000), we conclude that Fire did not lose a peremptory challenge, but exercised it. Therefore, he has not demonstrated prejudice and has not been deprived of any constitutional right. Without having to decide whether the juror should have been removed for cause, we reverse the Court of Appeals and remand for actions consistent with this opinion.

FACTS
Fire was charged with three counts of child molestation in the first degree. During voir dire the prosecuting attorney asked if any of the jurors could not completely put aside what he or she had heard about the case outside of the courtroom. After no one answered, the prosecutor began to question Juror No. 8:
MR. SILVERMAN: Juror Number 8. I'm picking on you, but why is it you feel you could do that that you could put that aside, whatever it was?
JUROR NO. 8: Well, that is a hard one.
MR. SILVERMAN: That's why I'm asking it.
JUROR NO. 8: To be completely honest, I wouldthis type of criminal activity, I have strong opinions on.
MR. SILVERMAN: O.K. And are those opinions that you have on these types of cases, is that going to affect your deliberations if you're a juror?
JUROR NO. 8: Very good possibility.
MR. SILVERMAN: Why is it that you feel that that might happen?
JUROR NO. 8: Can I be blunt?[[1]]
At that point the prosecuting attorney interrupted and indicated he would continue the conversation without the other jurors present. When Juror No. 8 was the sole juror present, the court asked him if he would like to say anything regarding reasons for sitting or not sitting on the jury.
JUROR NO. 8: The subject matter in this case. You know, if it was, you know, somebody stealing a car or even someone getting murdered, that's, you know, fine with me. But a case in this nature, you know. I consider him a baby raper, and it should be severely punished.
I'm very opinionated when it comes to this kind of a crime. I hold innocentor children from conception on very dear, and they should be protected.
THE COURT: You realize that this is just an accusation?
JUROR NO. 8: Yes, I do, ma'am.
THE COURT: Because of that, do you still feel that you could not start out with do you feel that you could start out with a clean slate, an open mind, and listen to the evidence in order to determine whether you feel that the defendant is innocent or guilty?
JUROR NO. 8: Yes. But in the case in thisin anyprobably any other case, yes, but in something like this, I'd be leaning to the accusation is there, and this type of case should be, you know, is very serious personally to me.
. . . .
MR. SILVERMAN: O.K. Are you telling me that you feel that your strong feelings about these types of offenses is such that that would even affect the role in making a determination of guilt or innocence?
JUROR NO. 8: That possibility is there.
. . . .
JUROR NO. 8: ... I'm saying that reasonableif reasonable has some leeway, 40, 60, I'd probably be on the 40 [side] on this particular kind of case instead of being in the middle. You know, I hate to, in somethinga different subject matter, it would be completely different.
. . . .
MR. SILVERMAN: And youif you were given instructions on what [proving charges beyond a reasonable doubt] means *1221 and the other instructions, you would follow the instructions as given to you by the Court?
JUROR NO. 8: Yes.
MR. SILVERMAN: But you do have some strong feelings about the case, but you'd still follow the law?
JUROR NO. 8: Yes.[[2]]
In declining to excuse Juror No. 8 for cause, the court cited the juror's indication that he would be able to follow the instructions and the law. Fire's counsel later renewed his challenge to Juror No. 8 for cause, and the court once again declined to excuse him. Fire's counsel then exercised Fire's second peremptory challenge to excuse Juror No. 8 and subsequently exhausted his six peremptory challenges.
The jury found Fire guilty on November 5, 1998. On appeal Fire raised three issues including prosecutorial misconduct.[3] The Court of Appeals held that Juror No. 8's responses indicated actual bias and that the trial court abused its discretion in failing to excuse him. Stating that it was bound by the decision in State v. Parnell, 77 Wash.2d 503, 508, 463 P.2d 134 (1969), the appeals court determined that the remedy is reversal; it remanded Fire's case for a new trial. In its petition for review the State raised only the issues of whether the court erred in not excusing Juror No. 8 and whether the remedy was correct. This court granted review on October 1, 2000.

ANALYSIS
At issue in this case is whether the trial court abused its discretion in denying a challenge for cause to Juror No. 8 and whether, without a further showing of prejudice, reversal is the remedy for a trial court's error in not dismissing a potential juror for cause where the defendant later uses a peremptory challenge to remove that juror and exhausts his remaining challenges before the final selection of the jury. Following Caruso v. Local Union No. 690, 107 Wash.2d 524, 534-35, 730 P.2d 1299 (1987) and Roberts, we may determine the second issue without reaching the first. Thus we consider whether, even if Juror No. 8 should have been excused for cause, Fire has alleged a situation which requires reversal of his conviction to cure the error.
The United States Constitution does not provide a basis for granting relief to Fire. The central federal legal issue in Fire's case has been definitively resolved in United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792. That case is directly on point:
We focus on this sequence of events: the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant's exercise of a peremptory challenge to remove that juror. Confronting that order of events, the United States Court of Appeals for the Ninth Circuit ruled that the Due Process Clause of the Fifth Amendment requires automatic reversal of a conviction whenever the defendant goes on to exhaust his peremptory challenges during jury selection. 146 F.3d 653 (1998).
We reverse the Ninth Circuit's judgment.... We hold ... that if the defendant elects to cure such an error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right.
Id. at 307, 120 S.Ct. 774.
The Court focused on the Ninth Circuit's conclusion that Martinez-Salazar was *1222 "forced" to exercise a peremptory challenge to cure an erroneous for-cause refusal. Id. at 314, 120 S.Ct. 774. The Court reasoned that a hard choice is not the same as no choice; Martinez-Salazar chose to exercise a peremptory challenge because he did not want a particular person to sit on the jury. Id. at 315, 120 S.Ct. 774. Instead of allowing the juror to sit and pursuing a Sixth Amendment challenge on appeal following the conviction, the defendant chose instead to use his peremptory challenge curatively. Id. In removing the juror, Martinez-Salazar did not lose a peremptory challenge, but used it for what it was for: to help secure an impartial jury. Id. at 315-16, 120 S.Ct. 774. Martinez-Salazar, together with his codefendants, exercised 11 peremptory challenges, which is all he was entitled to under the rule. Id. at 315, 120 S.Ct. 774.
As the Court indicated, if a defendant believes that a juror should have been excused for cause and the trial court refused his for-cause challenge, he may elect not to use a peremptory challenge and allow the juror to be seated. After conviction, he can win reversal on appeal if he can show that the trial court abused its discretion in denying the for-cause challenge.[4]
In Fire's case, even if Juror No. 8 should have been excused for cause, Fire exercised one of his peremptory challenges to remove him from the jury. Fire does not further show or even attempt to show that a biased juror sat on his panel. Thus, under the rule in Martinez-Salazar, Fire has not been deprived of any federal constitutional right.
Although the Court of Appeals in Fire recognized the existence and import of Martinez-Salazar, it stated it was bound by the decisions of this court. Fire, 100 Wash.App. at 727, 998 P.2d 362. After finding that Juror No. 8 should have been excused for cause, the Court of Appeals applied the rule in Parnell and reversed Fire's conviction. Id. at 729, 998 P.2d 362. The appeals court implicitly argues that although Fire may not have had any grounds for relief under the United States Constitution and federal case law, he does under the Washington Constitution and Washington case law.
Washington law contains two conflicting lines of cases concerning whether a defendant who shows that a trial court erred in not excusing a juror for cause demonstrates prejudice where the defendant exercised a peremptory challenge to remove that juror and later exhausted his peremptory challenges. One line follows the Parnell rule and the other arises out of State v. Latham, 100 Wash.2d 59, 64, 667 P.2d 56 (1983), which noted that the use of a peremptory challenge cures the error and that a further showing of prejudice is required. The Latham line culminates in this court's decision in Roberts, which cites as authority both Latham and Martinez-Salazar. Roberts, 142 Wash.2d at 517, 14 P.3d 713. Roberts, which was filed after the appeals court announced its decision in Fire, makes it difficult to revive the Parnell rule.
The Parnell rule arose from State v. Stentz, 30 Wash. 134, 143, 70 P. 241 (1902), quoted in Parnell, 77 Wash.2d at 508, 463 P.2d 134:
"A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury."
As a result, the Parnell court set aside the defendant's conviction and sentence and granted her a new trial. Parnell, 77 Wash.2d at 508, 463 P.2d 134. The reason this court gave for such a remedy was that every defendant is entitled to a fair trial before 12 unbiased jurors and furthermore, "[n]ot only should there be a fair trial, but there should be no lingering doubt about it." Id. Even though in this situation no biased juror was seated, the prejudice occurs in the *1223 deprivation of one peremptory challenge to which a defendant is entitled. Stentz, 30 Wash. at 147, 70 P. 241. Where a trial court wrongfully compels a defendant to exhaust peremptory challenges on jurors who should have been dismissed for cause, "his rights were invaded as much as though the jurors had been accepted after his peremptory challenges were exhausted." State v. Rutten, 13 Wash. 203, 204, 43 P. 30 (1895).
Latham, issued in 1983, chipped away at the Parnell rule. In Latham, a case similar to Fire, this court found that the defendant failed to show that the two jurors complained of should have been excused for cause. Latham, 100 Wash.2d at 64, 667 P.2d 56. Nevertheless, this court went on to enunciate a rule before declining to apply it:
Finally, we note the use of a peremptory challenge to remove a juror who should have been removed for cause "cures" the error. Where, as here, the juror is excused through a peremptory challenge, the defendant must show that the use of the peremptory challenge actually prejudiced his case. Petitioner contends, however, that because he was forced to use two peremptory challenges on these jurors, he was prejudiced. He argues the use of these challenges denied him the opportunity to exclude any jurors who may have had strong opinions about drug use. Because we hold the trial court did not err by refusing petitioner's challenges for cause, we need not address this issue.
Id. (citations omitted). Although this court in Latham never explicitly says that the petitioner exhausted his peremptory challenges, that appears to be the case since he complains about not being able to use his peremptory challenges on other jurors. Id. at 63, 64, 667 P.2d 56. Under this set of facts the Parnell rule indicates that the petitioner has demonstrated prejudice. By not simply reaffirming the Parnell rule and by implying that a further showing may be needed, this court undermined Parnell without, strictly speaking, reaching the issue.
After Latham appeared, more cases relied on it than on Parnell. See Caruso v. Local Union No. 690, 107 Wash.2d at 534-35, 730 P.2d 1299; State v. Rupe, 108 Wash.2d 734, 749-50, 743 P.2d 210 (1987); State v. Bernson, 40 Wash.App. 729, 741, 700 P.2d 758 (1985).
In Roberts this court tacitly abandoned the Parnell rule without overturning it. Roberts assigned error to the trial court's denial of his for-cause challenges against 13 jurors. Roberts, 142 Wash.2d at 517, 14 P.3d 713. Four of the jurors were seated in the jury box, but Roberts used his peremptory challenges to remove them, thereby exhausting his peremptory challenges. Id. At the close of jury selection, the trial court offered Roberts two free peremptory challenges because of a surplus of jurors. Id. at 487, 14 P.3d 713. Roberts declined. Id. Under the Parnell rule, Roberts alleged a situation in which he was prejudiced. Even if he had accepted the two extra peremptory challenges, the erroneous denial of four of his for-cause challenges would have forced Roberts to lose two peremptory challenges to which he was entitled. Under Parnell, Roberts would have demonstrated that his case was prejudiced by the court's actions. This court did not determine whether any of the four contested jurors should have been excused for cause. Instead, it disposed of the issue by discussing the legal sufficiency of Roberts' case. Citing Martinez-Salazar and Latham, this court said that "an erroneous denial of a challenge for cause may be cured when the challenged juror is removed by peremptory challenge." Id. at 517, 463 P.2d 134. Since Roberts removed the four jurors through his peremptory challenges, none of them sat on the jury.[5] "`So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.'" Id. at 518, 463 P.2d 134 (quoting Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)). This court concluded by holding that "because Roberts has not demonstrated that jurors who should have been removed for cause actually sat on the panel, his rights were not violated." Id. at 518, 463 P.2d 134. Because Roberts' rights would have been violated under *1224 the Parnell rule and this court found no violation, after Roberts, Washington law follows Martinez-Salazar, not Parnell.
There remains a question whether Roberts can be distinguished from the Parnell line of cases and from this case because Roberts did not exhaust all of his peremptory challenges. Because the Parnell rule is stated in terms of the defendant's having to exhaust his peremptory challenges, and Roberts did not, it might be argued that he could not demonstrate prejudice under Parnell. Hence, following this reasoning, Roberts does not tacitly overrule Parnell, but follows it.
But the rule in Parnell represents a specific case of a more general rule that the forced use of at least one peremptory challenge constitutes the loss or deprivation of that challenge and that a showing that a defendant was forced to use even one challenge means she has demonstrated prejudice. That more general rule applies to Roberts' situation even though he did not exhaust his peremptory challenges. Roberts alleged a situation in which even if he had exhausted his peremptory challenges by exercising the two additional challenges offered him, he would still have been forced to use two peremptory challenges. Under Martinez-Salazar, the forced use of a peremptory challenge is merely an exercise of the challenge and not the deprivation or loss of a challenge. Martinez-Salazar, 528 U.S. at 314-15, 120 S.Ct. 774. Following Ross and Martinez-Salazar, this court in Roberts held that the defendant's rights were not violated simply because he had to use peremptory challenges to achieve an impartial jury. Roberts, 142 Wash.2d at 518, 14 P.3d 713. After Roberts, this court no longer recognizes that the forced use of a peremptory challenge constitutes the loss or deprivation of a challenge. Therefore, the rule in Stentz enunciated in Parnell is no longer viable in Washington law.
No Washington case has thus far recognized a difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution. Rutten, 13 Wash. at 208, 43 P. 30, calls the right of the defendant to be tried by an impartial jury a "constitutional right" without distinguishing between the federal and state constitutions. Similarly, Stentz refers to "the constitutional guaranty to the accused of a trial by an impartial jury" without specifying which constitution provides the guaranty. Stentz, 30 Wash. at 143, 70 P. 241. Parnell cites both state and federal case law in support of the proposition that the right to a trial by jury includes the right to an unbiased and unprejudiced jury. Parnell, 77 Wash.2d at 507, 463 P.2d 134. In our analysis of Roberts' peremptory challenge claims, this court relied for authority upon both state and federal cases. Roberts, 142 Wash.2d at 517-18, 14 P.3d 713. Thus, Washington law does not recognize that article I, section 22 of the Washington State Constitution provides more protection than does the Sixth Amendment to the United States Constitution. Hence, Martinez-Salazar defines the scope of a defendant's right to an impartial jury in this situation.
Furthermore, Fire neither argues that the Washington State Constitution provides more protection than the federal constitution nor addresses the criteria identified in State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808 (1986). This court will not consider a claim that the Washington Constitution guarantees more protection than the federal constitution unless the party making the claim adequately briefs and argues the Gunwall factors. State v. Davis, 141 Wash.2d 798, 834, 10 P.3d 977 (2000). If the party has not engaged in a Gunwall analysis, this court will consider his claim only under federal constitutional law. See State v. Sullivan, 143 Wash.2d 162, 180 n. 73, 19 P.3d 1012 (2001); City of Spokane v. Douglass, 115 Wash.2d 171, 176, 795 P.2d 693 (1990). On this basis as well, Martinez-Salazar controls, and Fire's claim that he suffered prejudice fails.
A claim that the basis for the Parnell rule exists in Washington common law rather than upon constitutional grounds is not borne out by an examination of the case law. The Rutten court stated that its power to review the decision of the trial court rested upon its role as protector of a constitutional right:
While the statute gives to the court the right to determine the question of the impartiality of the juror, yet, this being a *1225 constitutional right, this court will review the discretion of the lower court in passing upon this question; and from the whole of the examination of these jurors, and especially juror Stark, we are satisfied that the right of the defendant to be tried by an impartial jury was invaded.
Rutten, 13 Wash. at 208, 43 P. 30 (emphasis added). The Stentz court continued to cite constitutional, not common law, grounds as the basis of its power to review the lower court: "The discretion of the trial court to determine partiality or impartiality in a jury is subject to review by the appellate court under the constitutional guaranty to the accused of a trial by an impartial jury." Stentz, 30 Wash. at 143, 70 P. 241. McMahon v. Carlisle-Pennell Lumber Co., 135 Wash. 27, 28-29, 236 P. 797 (1925), recognized that a constitutional right was at issue: "In State v. Rutten, 13 Wash. 203, 43 Pac.[P.] 30, we held that the constitutional rights of a defendant were invaded when the defendant was required to exhaust his peremptory challenges on jurors who should have been dismissed for cause." Thus, the Parnell rule, a direct quotation from Stentz, is based upon the constitutional right of a defendant to a trial by an impartial jury, and since no Washington case states that the Washington constitution contains a more expansive right to an impartial jury than does the federal constitution, the United States Supreme Court remains the controlling authority on this issue.
Hence, even if one does not agree that we adopted the Martinez-Salazar rule in Roberts, previous case law provides no basis for avoiding that rule. Here we expressly abandon the Parnell rule and adopt that enunciated by the United States Supreme Court in Martinez-Salazar. Accordingly, Fire has failed to show that he was prejudiced where no biased juror sat on his panel.

CONCLUSION
After Martinez-Salazar and Roberts, if a defendant through the use of a peremptory challenge elects to cure a trial court's error in not excusing a juror for cause, exhausts his peremptory challenges before the completion of jury selection, and is subsequently convicted by a jury on which no biased juror sat, he has not demonstrated prejudice, and reversal of his conviction is not warranted. The decision of the Court of Appeals is reversed, and Fire's case is remanded to the trial court for actions consistent with this opinion.
ALEXANDER, C.J., SMITH, IRELAND and OWENS, JJ., concur.
ALEXANDER, C.J. (concurring).
I agree with Justice Sanders that under Washington law a defendant in a criminal case is presumed to be prejudiced if that person is forced to use his or her last peremptory challenge in order to remove a juror who should have been removed for cause by the trial court. State v. Parnell, 77 Wash.2d 503, 508, 463 P.2d 134 (1969). See also dissent at 14 (citing McMahon v. Carlisle-Pennell Lumber Co., 135 Wash. 27, 28, 236 P. 797 (1925); State v. Stentz, 30 Wash. 134, 70 P. 241 (1902); State v. Rutten, 13 Wash. 203, 43 P. 30 (1895)). In other words, a defendant need not show that he was prejudiced in order to obtain reversal of a conviction that followed the defendant's use of his or her last peremptory challenge to overcome the wrongful denial of a challenge to a juror for cause. In this regard I am in accord with the dissent's view that our decision in Parnell has not been undermined and remains good law in Washington.
I nevertheless concur in the result reached by the majority. I do so because, in my view, our decision in Parnell should be abandoned. We should, instead, adopt the better rule that has been enunciated by the United States Supreme Court in United States v. Martinez-Salazar, 528 U.S. 304, 307, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), a case in which that Court was faced with the question of whether a defendant, who elects to exercise a peremptory challenge in order to cure a trial court's error in not granting a challenge for cause, is deprived of any rule-based or federal constitutional right if he or she is subsequently convicted by a jury on which no biased juror sat. The Court observed there that although peremptory challenges play an important role in reinforcing a defendant's right to trial by an impartial jury, a defendant's due process rights are not violated simply because the defendant uses his or her *1226 last peremptory challenge to cure an erroneously denied for-cause challenge. The Court said "such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." Martinez-Salazar, 528 U.S. at 311, 120 S.Ct. 774 (citing Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); quoting Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 63 L.Ed. 1154 (1919) ("`There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.'")).
In concluding that Martinez-Salazar was not deprived of a peremptory challenge, but rather used it "in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury," the United States Supreme Court reasoned that a "hard choice is not the same as no choice." Id. at 316, 315, 120 S.Ct. 774. It concluded therefore, that without a showing of prejudice, the loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury.
The Court's decision in Martinez-Salazar makes perfect sense to me and is a far better rule than that which we enunciated in Parnell. More importantly, the rule does not trample on any constitutional rights guaranteed by the Sixth Amendment to the United States Constitution or Washington Constitution article I, sections 21, 22.
The Sixth Amendment ensures that criminal defendants "`enjoy the right to ... trial, by an impartial jury.'" State v. Latham, 100 Wash.2d 59, 62, 667 P.2d 56 (1983); see Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). This right is the right to receive a fair trial by a panel of impartial, indifferent jurors. Latham, 100 Wash.2d at 62, 667 P.2d 56 (citing Irvin, 366 U.S. at 722, 81 S.Ct. 1639). The language of article I, section 22 of our state constitution is similar to that of the Sixth Amendment and has been construed to ensure and protect one's right to a fair and impartial jury. State v. Davis, 141 Wash.2d 798, 855, 10 P.3d 977 (2000). In addition, Washington Constitution article I, section 21 states that a defendant has a right to be tried by an impartial 12 person jury. State v. Gentry, 125 Wash.2d 570, 615, 888 P.2d 1105 (1995) (applying Wash. Const. art. I, § 21). Neither provision provides that a person has a right to a jury containing a particular juror or jurors. I subscribe to the view that these constitutional rights are not infringed when a defendant exercises a peremptory challenge to cure an erroneously denied for cause challenge. Like the United States Supreme Court, I would hold that unless a defendant can show prejudice, the mere fact that one uses his or her peremptory challenge to cure a wrongfully denied for-cause challenge does not establish a constitutional violation.
While I would not depart from the rule we established in Parnell if it were constitutionally based, it is clear that it is not the case. As the concurring judge at the Court of Appeals observed here, the rule we enunciated in that case is based not on any constitutional guaranty but, rather, is based on the "broader purpose of peremptory challenges: to allow a party to exclude a potential juror `for which no reason need be given.'" State v. Fire, 100 Wash.App. 722, 731, 998 P.2d 362 (Cox, J., concurring) (quoting RCW 4.44.140), review granted, 141 Wash.2d 1024, 11 P.3d 826 (2000).
Although the common law should be slow to change, "we have never hesitated to do so when, upon reconsideration, we have concluded that they were in error." In re Estate of Bordeaux, 37 Wash.2d 561, 593, 225 P.2d 433 (1950). The common law should avoid becoming an "unchanging compendium of desiccated maxims." Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 766, 458 P.2d 897 (1969) (Finley, J., dissenting).
In my opinion, the time has come to discard the rule enunciated in Parnell and adopt the better-reasoned rule set forth by the United States Supreme Court in Martinez-Salazar.
SANDERS, J. (dissenting).
For more than one hundred years Washington courts have held a criminal defendant is presumed to be prejudiced if forced to use his last peremptory challenge to remove a juror who should have been removed for cause. Today's ruling ignores this well-established precedent and overrules sub silentio no fewer than six decisions of this court.
*1227 The majority asserts, "Washington law contains two conflicting lines of cases concerning whether a defendant who shows that a trial court erred in not excusing a juror for cause demonstrates prejudice where the defendant exercised a peremptory challenge to remove that juror and later exhausted his peremptory challenges." Majority at 1222. One line, claims the majority, follows the rule in State v. Parnell, 77 Wash.2d 503, 463 P.2d 134 (1969), the other follows the rule in State v. Latham, 100 Wash.2d 59, 667 P.2d 56 (1983). Majority at 1222-1223.
However when Parnell was decided in 1969 there was already long-standing precedent holding a criminal defendant is presumed to have been prejudiced if forced to exhaust his peremptory challenges to remove a juror who should have been removed for cause. This rule dates to the earliest years of our statehood.
In 1893, D.C. Moody killed James Warner and was convicted of manslaughter. State v. Moody, 7 Wash. 395, 395, 35 P. 132 (1893). During jury selection Moody challenged Charles Nelson for cause. Id. at 396, 35 P. 132. The trial court denied the challenge. Id. On appeal this court determined if the trial court erred:
[It] was without prejudice, for the reason that said Nelson did not sit as a juror in the case, as he was peremptorily challenged by ... [Moody], who was in no manner injured by having to exercise his right in that regard as he did not exhaust all of his peremptory challenges during the impaneling of the jury.

Id. at 397, 35 P. 132 (emphasis added). The implication is, of course, Moody would have been injured had he exhausted all of his peremptory challenges to cure the court's error.
If there were ever any doubt on this issue it was resolved two years later by State v. Rutten, 13 Wash. 203, 43 P. 30 (1895). Rutten appealed his murder conviction asserting, inter alia, the trial court erroneously denied several of his for cause challenges to potential jurors. Rutten, 13 Wash. at 204, 43 P. 30. Rutten exhausted his peremptory challenges to remove the objectionable jurors. Id. When we addressed the matter on appeal, we noted, "if the court wrongfully compelled [Rutten] to exhaust peremptory challenges on jurors who should have been dismissed for cause, his rights were invaded as much as though the jurors had been accepted after his peremptory challenges were exhausted." Id.
Rutten was cited with approval in State v. Stentz, 30 Wash. 134, 70 P. 241 (1902). Stentz was charged with manslaughter when he killed M.W. Orton by running over him with a horse drawn wagon. Id. at 134-35, 70 P. 241. During voir dire it was discovered one of the veniremen, Mr. Sperry, was on the state's witness list. Id. at 136, 70 P. 241. Stentz challenged Mr. Sperry for cause but the challenge was denied. Id. at 137, 70 P. 241. Stentz then used his final peremptory challenge to remove Sperry from the panel. Id. Even without Sperry, the jury returned a guilty verdict.
On appeal we held the trial court erred when it failed to strike Mr. Sperry for cause. Id. at 143, 70 P. 241. We opined, "A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury." Id. (citing Rutten, 13 Wash. 203, 43 P. 30). We concluded: "Inasmuch as [Stentz] was compelled to get rid of the juror Sperry by a peremptory challenge, the accused was deprived of one peremptory challenge to which he was by law entitled. For that reason, the judgment of the court is reversed, and the cause remanded for a new trial." Id. at 147, 70 P. 241. Thus by 1902 the rule in Washington was firmly established.
Moreover, today's majority completely ignores the critical case in our peremptory challenge jurisprudence; the case which distinguishes the law in Washington from that of other jurisdictions. The question presented in McMahon v. Carlisle-Pennell Lumber Co., 135 Wash. 27, 28, 236 P. 797 (1925) was whether the trial court committed prejudicial error during jury selection. Prospective juror Burchett was challenged for cause since he was an employee of the Carlisle-Pennell Lumber Co. Id. The challenge was denied. "Thereafter [McMahon] peremptorily challenged *1228 the juror, and before securing the jury had exhausted all three of the peremptory challenges allowed him by law." Id.
On appeal we held denial of the for cause challenge was clearly error. Id. We cited State v. Rutten, State v. Stentz, State v. Moody, and State v. Muller, 114 Wash. 660, 195 P. 1047 (1921) with approval as authority for the proposition that a defendant is presumed to have been prejudiced if he is compelled to exhaust his peremptory challenge on a juror who should have been removed for cause. McMahon, 135 Wash. at 28-29, 236 P. 797. More importantly we recognized while the majority of foreign jurisdictions do not presume prejudice in such cases, Washington does not follow the majority rule:
The rule stated by the majority [of courts] is that, where the court refuses a challenge for cause, and the party challenging removes the juror by a peremptory challenge and exhausts all his peremptory challenges, while it is error it will not be considered prejudicial unless the record discloses that some juror was kept upon the panel who was not fair and impartial.... But we think that the majority rule entirely overlooks at least one of the purposes of the peremptory challenges allowed by law.... [I]t seems to us that the right to peremptory challenges is given to enable parties to excuse from the jury those whom they may, for any reason, feel would not make fair jurors even though nothing is disclosed on the voir dire.
McMahon, 135 Wash. at 30, 236 P. 797. We therefore concluded, "Under the authority of our own decisions" (Rutten, Stentz, Moody, and Muller), McMahon had been prejudiced when he was forced to use a peremptory challenge to strike jurors who should have been removed for cause, and he was therefore entitled to a new trial. Id. at 31, 236 P. 797.
But here the majority concludes even if the objectionable juror "should have been dismissed for cause, Fire exercised one of his peremptory challenges to remove the juror, and there is no showing that a biased juror, against whom the peremptory challenge might have been used, sat on his panel." Majority at 1219. But controlling Washington precedent does not require Mr. Fire to make such a showing. Quite the contrary.
The fundamental nature of a peremptory challenge is the basis of our decision to distinguish Washington law from that of the majority of other courts. "`A peremptory challenge is an objection to a juror for which no reason need be given, but upon which the court shall exclude him.'"[1]McMahon, 135 Wash. at 31, 236 P. 797 (quoting Rem. Comp. Stat. § 325). McMahon held, "If no reason need be given, we should not require the injured party to affirmatively show by the record that there were reasons for excusing some other juror that sat on the panel." McMahon, 135 Wash. at 31, 236 P. 797. Notwithstanding, the majority here would require Fire to show the jurors seated after he exhausted his peremptory challenges were actually biased. This is contrary to McMahon. McMahon is long-standing precedent established by this court. It is directly on point.
Ten years after McMahon came State v. Patterson, 183 Wash. 239, 243-44, 48 P.2d 193 (1935), in which the defendant Patterson assigned error on appeal to the trial court's denial of two challenges for cause against prospective jurors. Patterson exhausted his peremptory challenges to remove the objectionable jurors when the court failed to remove them for cause. Id. While we ultimately determined the trial court did not err, we recognized if we did determine the trial court erred, the error could not be cured by Patterson's use of the peremptory challenges:
We have held that a refusal to sustain challenges for proper cause, necessitating the use of his peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been, as in this case, compelled subsequently to exhaust all his peremptory challenges before the completion of the jury.
Patterson, 183 Wash. at 244, 48 P.2d 193.
We again expressed our commitment to this rule in State v. Parnell, 77 Wash.2d 503, 463 P.2d 134 (1969). Vivian Parnell was convicted of violating Washington's Uniform Narcotic Drug Act. Parnell, 77 Wash.2d at *1229 504, 463 P.2d 134. Her sole argument on appeal was the trial court erroneously denied a for cause challenge to a potential juror. Id. Parnell argued she was compelled to exhaust her peremptory challenges to remove the objectionable juror and was thus entitled to a new trial. We agreed and held:
Any error involved in failing to grant the defendant's challenge for cause against venireman Martin was not obviated by the fact that he did not sit on the jury. To remove him from the panel required the exercise of one of the defendant's six peremptory challenges. All of her peremptory challenges were eventually used, and she requested an additional peremptory to replace the one used on venireman Martin. This was denied....
A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury.
Parnell, 77 Wash.2d at 508, 463 P.2d 134 (quoting Stentz, 30 Wash. at 143, 70 P. 241). Consequently we reversed Parnell's conviction and remanded for a new trial. Id. at 508, 463 P.2d 134.
The majority here asserts State v. Latham, 100 Wash.2d 59, 667 P.2d 56 (1983) "chipped away at the Parnell rule." Majority at 1223. However Latham is patently distinguishable and never addresses the issue raised in Parnell. James Latham was charged with first degree arson after a fire severely damaged his home. Latham, 100 Wash.2d at 60, 61, 667 P.2d at 56, 57. During voir dire Latham asserted for cause challenges against two potential jurors who were both firemen. Id. at 61, 667 P.2d 56. The trial court denied both challenges whereupon Latham utilized his peremptory challenges to remove both firemen from the panel. Id. Nevertheless Latham was convicted. Id. at 62, 667 P.2d 56. On appeal Latham argued the trial court committed reversible error when it erroneously denied his challenges for cause thereby requiring him to use his peremptory challenges to secure an unbiased panel. Id. at 64, 667 P.2d 56.
On review we determined Latham's argument was based on a false premise: The trial court did not err when it denied his challenges for cause. Id. Therefore we never addressed the issue of whether Latham was prejudiced by using his peremptory challenges. See Latham, 100 Wash.2d at 64, 667 P.2d 56 ("Because we hold the trial court did not err by refusing petitioner's challenges for cause, we need not address this issue.").
Today's majority mistakenly concludes this court "undermined Parnell" when we did not apply its rule to the facts in Latham. Majority at 1223. However the Stentz rule, which we reiterated in Parnell, applies only where (1) the trial court erroneously denies a challenge for cause, and (2) the proponent of the challenge then exhausts his peremptory challenges to remove the objectionable juror. See Stentz, 30 Wash. at 143, 70 P. 241 ("A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury."); see also Parnell, 77 Wash.2d at 508, 463 P.2d 134 (same). It would have been completely inappropriate to apply the Stentz rule in Latham, as that case did not involve an erroneous denial of a proper challenge for cause. Latham, 100 Wash.2d at 63-64, 667 P.2d 56 ("Latham has failed to show that the two jurors should have been excused for bias."). We have distinguished Parnell on this basis before. See State v. Gilcrist, 91 Wash.2d 603, 611, 590 P.2d 809 (1979).
Moreover, as the majority concedes, Latham never expressly says the petitioner exhausted his peremptory challenges. Majority at 1223. This is a critical component of the Parnell rule. Significantly Latham relies on State v. Robinson, 75 Wash.2d 230, 231, 450 P.2d 180 (1969) (decided the same year as Parnell), which holds a defendant must exhaust all of his peremptory challenges in order to show he was prejudiced by the exercise of a peremptory challenge. The rule that there can be no prejudice unless the defendant exhausts his peremptory challenges is well established. See State v. *1230 Tharp, 42 Wash.2d 494, 500, 256 P.2d 482 (1953); Rich v. Campbell, 164 Wash. 393, 395, 2 P.2d 886 (1931); State v. Muller, 114 Wash. 660, 661, 195 P. 1047 (1921); State v. Champoux, 33 Wash. 339, 352, 74 P. 557 (1903); State v. McCann, 16 Wash. 249, 251, 47 P. 443 (1896).
Nor did Latham involve the erroneous denial of a for cause challenge. Moreover it is not apparent that the petitioner in Latham exhausted all of his peremptory challenges. Thus Latham cannot properly be said to undermine the holding in Parnell. The majority claims Caruso v. Local Union No. 690, 107 Wash.2d 524, 730 P.2d 1299 (1987); State v. Rupe, 108 Wash.2d 734, 743 P.2d 210 (1987); and State v. Bernson, 40 Wash.App. 729, 700 P.2d 758 (1985) follow Latham rather than Parnell. However nothing in Caruso suggests the defendant exhausted his peremptory challenges when he struck the juror he felt should have been removed for cause. Thus, Parnell does not apply. Further, Parnell applies in neither Rupe nor Bernson. The trial courts in both cases properly denied the for cause challenges which formed the basis of appeal. Rupe, 108 Wash.2d at 749, 750, 743 P.2d 210; Bernson, 40 Wash. App. at 741, 700 P.2d 758. This is a critical distinction as Parnell applies only where a trial court erroneously denies a proper challenge for cause.
Similarly misplaced is the majority's reliance on State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000). The majority suggests, "In Roberts this court tacitly abandoned the Parnell rule without overturning it." Majority at 1223. Not so. Parnell was not applicable in Roberts for two reasons: (1) it was never established that the trial court erred when it denied Roberts' for cause challenges, and (2) even though Roberts exhausted his peremptory challenges to remove jurors he found objectionable, the trial court offered him two additional peremptory challenges which he declined to accept. Roberts, 142 Wash.2d at 517, 518, 14 P.3d 713. The majority is wrong again when it asserts, "Under the Parnell rule, Roberts alleged a situation in which he was prejudiced." Majority at 1223. Parnell applies only where the trial court erroneously denies a proper challenge for cause and the defendant exhausts his peremptory challenges. Parnell, 77 Wash.2d at 508, 463 P.2d 134. As the majority acknowledges not only was Roberts given extra peremptory challenges which he declined to exercise, he also never established the challenged jurors should have been removed for cause. Majority at 1223.
Further the language in Roberts which states "an erroneous denial of a challenge for cause may be cured when the challenged juror is removed by peremptory challenge," Roberts, 142 Wash.2d at 517, 14 P.3d 713, is in no way inconsistent with the rule in Parnell. For example, assume a criminal defendant has six peremptory challenges[2] and he uses three to remove objectionable jurors. He then challenges a fourth juror for cause but the trial court erroneously denies the challenge. The defendant then exercises the fourth of his six peremptory challenges to remove the juror who should have been removed for cause. Thereafter the jury is empanelled without the defendant ever having exercised his fifth and sixth peremptory challenges. In such instance the trial court's error has clearly been "cured." The defendant has not been prejudiced because the biased juror did not sit on the panel AND because the defendant was not compelled to exhaust all of his peremptory challenges.
However that is fundamentally different from our situation in this case where the defendant is compelled to exhaust all his peremptory challenges to remove a venireman who should have been removed for cause. While this might seem to cure the error of the trial court, the defendant is nevertheless prejudiced because he is denied the use of a peremptory challenge to which he is entitled by law.
Roberts and Parnell are easily distinguished. Roberts never established his for cause challenges were erroneously denied. Roberts, 142 Wash.2d at 518, 14 P.3d 713. Further he was given extra peremptory challenges which he declined to use. Id. In contrast, Parnell did establish the trial court erroneously denied her challenge for cause and she was required to exhaust her peremptory challenges to remove the objectionable *1231 juror from the panel. Parnell, 77 Wash.2d at 507, 508, 463 P.2d 134. To suggest Roberts overrules Parnell, tacitly or otherwise, is incredible.
Finally the Supreme Court's decision in United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) while instructive, is by no means dispositive. Nor is the fact that Mr. Fire has not provided an independent state constitutional analysis pursuant to State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). The basis for the rule that a defendant is presumed to be prejudiced when he is compelled to exhaust his peremptory challenges to remove a juror who should have been removed for cause is found in neither the state nor the federal constitution. Rather it is firmly ensconced in Washington common law.[3] We have long since considered, and rejected, the position recently adopted by the Supreme Court in Martinez-Salazar. See McMahon, 135 Wash. 27, 236 P. 797. We are the final arbiters of Washington law and for one hundred years our jurisprudence has consistently held, "A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury." Stentz, 30 Wash. at 143, 70 P. 241.
For the foregoing reasons I dissent from this profoundly mistaken majority opinion. I would affirm the ruling of the Court of Appeals and remand this case for a new trial.
MADSEN, CHAMBERS, and JOHNSON, JJ., concur.
NOTES
[1] Verbatim Report of Proceedings (VRP) (Nov. 3, 1998) at 25-26.
[2] Id. at 75-78.
[3] Br. of Appellant (Fire) at 1. The prosecutorial misconduct issue is not before this court. In his brief before the Court of Appeals, Fire alleged that the prosecutor's repeatedly asking Fire during cross-examination whether the State's witnesses were mistaken had the effect of suggesting to the jury that it had to believe the State's witnesses were mistaken in order to acquit Fire. Id. at 24. The prosecutor also suggested in oral argument that, in order to believe Fire, the jury had to find that the State's witnesses were lying. Id. at 26. Fire argued that this behavior amounted to misconduct. Id. at 24, 26. The Court of Appeals reversed Fire's conviction on other grounds but nevertheless discussed this issue in order to provide guidance during the new trial. Pet. for Review, App. A at 8. The Court of Appeals concluded the prosecutor's questioning of Fire during cross examination was improper, but that he had waived any error in this case by failing to timely object. Id. at 9. Fire did not cross-appeal.
[4] The showing required of the defendant would be the same under Martinez-Salazar as it would be under Parnell, but the difference is that under Parnell, the defendant's conviction would be reversed even if the juror were not seated. Parnell held that a court's error in refusing to excuse a juror for cause, thus forcing the defendant to exercise a peremptory challenge to remove the juror, constitutes prejudice where the defendant subsequently exhausted her peremptory challenges. Parnell, 77 Wash.2d at 508, 463 P.2d 134.
[5] One of the 13 original jurors challenged for cause by Roberts was seated as an alternate but never served as a juror on the trial or participated in deliberations. Roberts, 142 Wash.2d at 485, 14 P.3d 713.
[1] This language is identical to current CrR 6.4(e).
[2] In all prosecutions for offenses punishable by imprisonment in a penitentiary the defendant is entitled to six peremptory challenges. CrR 6.4(e)(1).
[3] The majority argues Washington cases couch erroneous exhaustion of peremptory challenges due to failure to sustain a valid challenge for cause as a violation of a constitutional right. Majority at 1224. Notwithstanding, the cited language in State v. Rutten, 13 Wash. at 208, 43 P. 30, and State v. Stentz, 30 Wash. at 143, 70 P. 241, references the constitutional right to an impartial jury, not the constitutional right to a peremptory challenge, per se. As Stentz makes clear the resulting prejudice occasioned by an erroneous denial for cause is not cured by excusing the juror on a peremptory challenge when all peremptory challenges are exhausted. 30 Wash. at 143, 70 P. 241. ("A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury. State v. Rutten, supra."). Under state law the exhaustion of peremptory challenges under these circumstances is deemed prejudicial error mandating a new trial notwithstanding that error, in and of itself, may not be of constitutional magnitude. The language quoted by the majority from McMahon (majority at 1225) is merely a loose summary of the holding in Rutten which must be understood by its actual text as well as the actual language of Stentz, also referenced in McMahon, 135 Wash. at 28, 236 P. 797. Therefore the rule of prejudice associated with the exhaustion of peremptory challenges in this context is decidedly of state, not federal, origin, and is not subject to the shifting sands of the United States Supreme Court with respect to the proper interpretation and construction of the United States Constitution.