FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG -6 AM 10: 54

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76057-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL BENJAMIN SOUTHERLAND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 6, 2018 |
| | ) | |

VERELLEN, J. — Paul Southerland appeals his conviction for failure to register as a sex offender. Because Southerland does not show that the trial court abused its discretion in denying his for-cause challenge to a juror who was ultimately seated on the jury, we affirm.

## FACTS

The State charged Southerland by amended information with failure to register as a sex offender. Southerland had prior convictions for child molestation in the first degree and felony failure to register as a sex offender. The State alleged that between August 27, 2014 and July 21, 2016, Southerland was required to register as a sex offender and knowingly failed to do so.

A jury convicted Southerland as charged, and the trial court sentenced him to 12 months and 1 day confinement. Southerland appeals.

## ANALYSIS

### *For-Cause Challenge to Juror*

Southerland argues that the trial court violated his right to a fair trial before an impartial jury when it denied his motion to strike juror 7 for cause. Even assuming, but not deciding, that Southerland has properly preserved this issue, his argument fails.[1]

"Actual bias is a ground for challenging a juror for cause,"[2] and the trial court has the duty to excuse any juror who is unfit by reason of bias.[3] Actual bias occurs when the juror's opinion, in reference to the action or to either party, satisfies the court that the juror cannot try the issue impartially and without prejudice to the substantial rights of the challenging party.[4] That a juror has expressed "such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the

---

[1] The State contends that under State v. Clark, 143 Wn.2d 731, 762, 24 P.3d 1006 (2001), Southerland did not preserve this issue because he failed to use all of his peremptory strikes. Southerland contends that State v. Fire, 145 Wn.2d 152, 158, 34 P.3d 1218 (2001) establishes that he was not required to exercise all of his peremptory strikes in order to bring this challenge. Because Clark and Fire are both factually distinguishable from Southerland's appeal, we choose to resolve this issue on the merits and do not address the preservation issue.

[2] State v. Lawler, 194 Wn. App. 275, 281, 374 P.3d 278, review denied, 186 Wn.2d 1020 (2016).

[3] RCW 2.36.110.

[4] Lawler, 194 Wn. App. at 281.

issue impartially."[5] The trial court may determine whether a litigant has successfully rehabilitated a juror who expresses actual bias.[6]

We review a trial court's decision on excusing jurors for cause for an abuse of discretion.[7] This standard recognizes that the trial court is in the unique position to assess potential jurors' "tone of voice, facial expressions, body language, or other forms of nonverbal communication."[8] We simply cannot and should not make those assessments as an appellate court.[9]

Here, during voir dire, the prosecutor asked the jurors in the jury box, "What was your reaction like when you heard the charge in this case?"[10] After several other jurors responded, the prosecutor asked juror 7 to share her thoughts. She responded, "I would agree with what Juror Number 1 said, as well. I do agree that it's not that hard to re-register, when there are many kids around that are not always under supervision. So it's nice to have, to know if someone's registered or not."[11]

Later, defense counsel asked what the potential jurors thought about the fact that Southerland had a prior conviction for failure to register as a sex offender. Juror 7 explained her reaction:

> [DEFENSE COUNSEL]:    . . . What did you think, then?

---

[5] RCW 4.44.190.

[6] State v. Witherspoon, 82 Wn. App. 634, 638, 919 P.2d 99 (1996).

[7] Id.

[8] Lawler, 194 Wn. App. at 287.

[9] Id.

[10] Report of Proceedings (RP) (Oct. 3, 2016) at 48.

[11] Id. at 49

PROSPECTIVE JUROR NO. 7: That I wasn't very observant or hearing everything you said, I was like --

[DEFENSE COUNSEL]: Well, is that necessarily fair[?] [B]ecause when you hear child molestation, right, you're brand new, you're showing up[.] [W]hat kind of case is this going to be[?] [A]nd then, all of a sudden, you hear, whammo, it's a criminal case [and] whammo, it's child molestation, right?

PROSPECTIVE JUROR NO. 7: Right.

[DEFENSE COUNSEL]: You think, oh, wow, okay. What was your thought process? Can you describe what was going on in your mind? I mean, can you imagine that --

PROSPECTIVE JUROR NO. 7: Well, initially I was shocked, you know, I -- as many people were -- and that the failure to register --

[DEFENSE COUNSEL]: Then you realized what's --

PROSPECTIVE JUROR NO. 7: It was more a than a paper trail -- lack of paper trail, I understand that, and -- the repetitiveness of it, just right now --

[DEFENSE COUNSEL]: Yeah. Right.

PROSPECTIVE JUROR NO. 7: -- kind of makes it a bigger deal.

[DEFENSE COUNSEL]: Yeah. Okay. A bigger deal, because, if you would?

PROSPECTIVE JUROR NO. 7: Because just a failure of -- repetitive, as being responsible, you know, keeping papers and what have you.

[DEFENSE COUNSEL]: Okay. So you've learned that Paul has allegedly been convicted of child molestation in the first degree. The State's got to prove that. The State's got to prove that he's allegedly been convicted of a second -- of a prior failure to register as a sex offender, right? So does that make it more likely that you're going to be thinking, I think he's guilty of this, you know?

PROSPECTIVE JUROR NO. 7: I do, yes. I'm just waiting for evidence, obviously, but --

[DEFENSE COUNSEL]: Yeah.

4

PROSPECTIVE JUROR NO. 7: -- if there is evidence, there should be --

[DEFENSE COUNSEL]: Right.

PROSPECTIVE JUROR NO. 7: -- in the judicial system --

[DEFENSE COUNSEL]: Right.

PROSPECTIVE JUROR NO. 7: -- then I would say he's guilty.

[DEFENSE COUNSEL]: But at this point, are you really kind of thinking, okay, I mean --

PROSPECTIVE JUROR NO. 7: I'm waiting for information.

[DEFENSE COUNSEL]: Okay. But at this -- okay.[12]

Defense counsel then asked who agreed that "the situation got a little bit more difficult for defense" given Southerland's prior conviction for failure to register, and juror 7 raised her card.[13] She again raised her card when asked who would want to hear from Southerland during the trial.

At the end of voir dire, defense counsel challenged juror 7 for cause:

[DEFENSE COUNSEL]: Yes please, Your Honor, Juror Number 7 had said that she thought she wouldn't -- that she was really in line with guilt, if I'm not misstating it, when she learned the new information about the allegation of the felony failure to register conviction.

THE COURT: [Prosecutor]?

[PROSECUTOR]: Your Honor, may I voir dire Number 7? I don't recall that.

THE COURT: Yes.

---

[12] Id. at 64-66.

[13] Id. at 66.

5

[PROSECUTOR]: Juror Number 7, we've spoken about the State's burden in this case, the State's burden to establish everything that I'm alleging beyond a reasonable doubt; do you understand that?

PROSPECTIVE JUROR NO. 7: Sure.

[PROSECUTOR]: Can you hold the State to that burden?

PROSPECTIVE JUROR NO. 7: Yes, I can.

[PROSECUTOR]: Can you hold the State to that burden even though you had initially misheard or not heard all of the allegation in this case?

PROSPECTIVE JUROR NO. 7: Yes.

[PROSECUTOR]: And can you do so in a fair and unbiased manner?

PROSPECTIVE JUROR NO. 7: Yes.

[PROSECUTOR]: Thank you. The State would object, Your Honor.

THE COURT: And based on my notes, I'm going to deny the challenge of Juror Number 7.

[DEFENSE COUNSEL]: Okay.[14]

After exercising six of seven peremptory strikes, defense counsel accepted the jury with juror 7 impaneled.

Southerland argues that several of juror 7's comments indicate that she would not follow the court's instructions on his presumption of innocence and the burden of proof carried by the State. But in her original conversation with defense counsel, juror 7 stated that she was waiting for "evidence" and "information" before she decided whether or not Southerland was guilty. And the prosecutor later rehabilitated juror 7 by confirming that she would hold the State to its burden of proof in a fair and

---

[14] Id. at 148-49.

unbiased manner. Therefore, the record does not indicate that juror 7 expressed serious doubts as to her ability to be impartial. The trial court did not abuse its discretion in denying Southerland's challenge.

Southerland argues that juror 7's statements in this case are analogous to juror statements in State v. Gonzales[15] and State v. Fire[16] and require reversal. But in both of those cases, the challenged jurors unequivocally admitted a bias and indicated that the bias would likely affect their deliberations.[17] Juror 7 made no such unequivocal admission, and she specifically confirmed that she would hold the State to its burden of proof in a fair and unbiased way. Therefore, Gonzales and Fire are distinguishable.

Southerland also argues that State v. Irby[18] and Hughes v. United States[19] are controlling. They are not. In those cases, a juror displayed actual bias, but no one challenged the juror for cause.[20] Both courts held that the defendant could raise the

---

[15] 111 Wn. App. 276, 45 P.3d 205 (2002).

[16] 100 Wn. App. 722, 998 P.2d 362 (2000), rev'd on other grounds, 145 Wn.2d 152, 34 P.3d 1218 (2001).

[17] Gonzales, 111 Wn. App. at 277-82 (no rehabilitation attempted where juror stated it would be difficult to disbelieve a police witness, indicated the bias would likely affect her deliberations, and admitted she did not know if she could presume innocence in the face of officer testimony indicating guilt); Fire, 100 Wn. App. at 728 (despite affirming one-word answers that he could be fair, juror indicated actual bias by saying he considered defendant to be a "baby raper" who should be "severely punished," that children are more credible than adults, and that his strong feelings about the case could affect his determination of guilt or innocence).

[18] 187 Wn. App. 183, 347 P.3d 1103 (2015).

[19] 258 F.3d 453 (6th Cir. 2001).

[20] Irby, 187 Wn. App. at 190 (juror stated, "I would like to say he's guilty"); Hughes, 258 F.3d at 456 (juror stated, "I don't think I could be fair.").

issue of juror bias for the first time on appeal and that reversal was required where no one attempted to elicit an assurance that the juror had an open mind on the issue of guilt.[21]  Here, the prosecutor did elicit an assurance that juror 7 could be fair and unbiased.  Irby and Hughes do not require reversal.

Finally, Southerland argues that, even though the prosecutor attempted to rehabilitate juror 7, such rehabilitation did not go to the actual bias she expressed.  Southerland identifies those biases as a failure to apply the presumption of innocence fairly and a failure to state she could follow the court's instructions on the law.  But based on juror 7's statement that she was waiting for "evidence" and "information" before she decided whether Southerland was guilty, she was not biased against the presumption of innocence.  And nothing in the record indicates that juror 7 expressed she could not follow the court's instructions.  Therefore, rehabilitation on those issues was not necessary.

We affirm.

WE CONCUR:

_____

_____
Mann, ACJ

_____

---

[21] Irby, 187 Wn. App. at 196-97; Hughes, 258 F.3d at 463.